# THE STATE v. CHESS CLAPPER, Appellant.

### Division Two, May 14, 1907.

1. **REMARKS OF COUNSEL: Abuse of Defendant and His Counsel: *Reversible Error*.** The prosecuting attorney, in his closing argument to the jury, said: "The attorney for the defendant has tampered with the witnesses; you know it, and I know it, and he ought to be convicted for it; and, too, the attorney for the defendant has attempted to buffalo and bulldoze this court and myself. . . . The defendant is a scoundrel and a perjurer, and ought to be convicted." Defendant objected to the remarks at the time they were made, and requested the court to instruct the jury to disregard them in considering of their verdict, but this the court failed to do, but simply requested the prosecuting attorney to keep within the record. *Held*, reversible error.

2. ————: **Not in Motion for New Trial.** Improper remarks of counsel not called to the court's attention in the motion for new trial can not be considered on appeal.

Appeal from McDonald Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Pepper, Clay & Sheppard* for appellant.

The court erred in permitting the prosecuting attorney in his closing argument to the jury to make improper remarks, and in refusing to reprimand him therefor, and in refusing to instruct the jury not to consider the said improper remarks in reaching their verdict in the case. State v. Helm, 92 Iowa 540; State v. Woolard, 111 Mo. 255; Haynes v. Trenton, 108 Mo. 133; State v. Fischer, 124 Mo. 464; State v. Young, 99 Mo. 683; State v. Harvey, 131 Mo. 338; Long v. State, 55 Ind. 182.

*Herbert S. Hadley,* Attorney-General, and *Rush C. Lake,* Assistant Attorney-General, for the State.

It appears from the bill of exceptions that the defendant objected to the remarks made by the prosecuting attorney and that "the court thereupon requested the attorney for the State to keep within the record, but wholly failed to instruct the jury, either orally or by written instructions, as requested by the attorney for the defendant." From the foregoing it is shown that the court reprimanded and rebuked the prosecuting attorney for making the remarks which defendant's attorney construed as being unwarranted by evidence. That this was a sufficient reprimand or rebuke by the court is shown by the decisions of this court in the following cases: State v. Lee, 66 Mo. 168; State v. Degonia, 69 Mo. 490; State v. Howard, 118 Mo. 145; State v. Brandenburg, 118 Mo. 187; State v. Taylor, 134 Mo. 158; State v. Wright, 141 Mo. 337; State v. Allen, 174 Mo. 697.

BURGESS, J.—At the January term, 1905, of the circuit court of McDonald county, the defendant was convicted of a felonious assault with intent to kill one James Turner, and his punishment fixed at two years in the penitentiary, under an information filed by the prosecuting attorney of said county charging him with the commission of said offense.

After filing timely motions for new trial and in arrest, which were overruled, defendant appealed.

The testimony shows that the quarrel which led to the shooting grew out of a drunken spree of the day before, during which, as defendant claimed, he was robbed of $68. He accused James Turner of the theft of the money, the only apparent ground for such charge being that Turner held defendant's note for about that sum. On the day following the drunken spree, the defendant and his two brothers met Turner

and two other young men on the road, when defendant demanded of Turner the said note or the return of the money which he claimed to have lost. The evidence shows that the parties were within eight or ten feet of one another, and that Turner was sitting on a fence, holding the bridle reins of his pony in his hands, and that defendant, without warning, drew his pistol and began shooting at Turner, none of the shots taking effect.

James Turner testified that he met the defendant, and that the latter said, "What did you do with my money? You got my money." I said, "No," and he said, "I believe you got it," and I told him I didn't; and he went on talking and kept on accusing me of getting it, and then he called for the note or an order for it, or receipt or order, and I told him I would not give it to him; and I stepped over and set down on the fence, and they surrounded me. Bill got over on the east side of me and Chess on the other side, and Jerry came up in front of me; I was riding my pony, me and Jess Moyer, and come down together. I rode my pony over there, and set down on the fence, and Chess said that if I didn't give up the note he would cause me trouble, and I told him I wouldn't, and he kept on saying that over again, and wanted an order for the note, and I wouldn't give it to him, and he said, "I will cause you trouble." . . . Chess said, "We will cause you trouble if you don't give up that note; we will have a warrant taken out for you," and I said, "I won't give it up," and Jerry said, "If I was Chess, and knew he got the money," he said you would be like Chess and want him to give it up, and I said, "I didn't get it," and Chess said, "Well, I will cause you trouble," and he drawed his gun out of his overcoat and pulled off his gloves, and I was sitting on the fence. He brought it over that way at me, and

I jumped off the fence, and he put his bullet through my jumper.

Being asked if defendant fired at him, he said, "Yes, sir, and I run across the road, and he shot at me again and hit my pony one shot, and he shot through my jumper, right down there, and cut through my shirt, down through my undershirt, and under there, and I run on down the road and jumped over the fence, and Chess followed me down the road."

"Q. How far did he follow you? A. Something like one hundred yards.

"Q. Did he fire any more shots than those three? A. He fired four that I know of; I didn't stop to count the shots."

The testimony of James Turner was corroborated by Homer Means, who was an eyewitness to the occurrence.

The defendant, Chess Clapper, testified as to the occurrences leading up to the shooting substantially as shown by the State, except that he stated that before he began shooting, the prosecuting witness, James Turner, made a move as if to draw a gun, and that he then opened fire, discharging four shots, none of which took effect.

The case was submitted to the jury under instructions given by the court which are not set out in the bill of exceptions, and cannot, of course, be considered on this appeal.

The defendant assigns as error the action of the court in permitting the prosecuting attorney, in his closing address to the jury, to make use of the following objectionable remarks:

"The attorney for the defendant has tampered with the witnesses; you know it, and I know it, and he ought to be convicted for it; and, too, the attorney for the defendant has attempted to buffalo and bulldoze this court and myself, just because we were new at the

business, and thought we would not know any better.

"The defendant is a scoundrel and a perjurer, and ought to be convicted."

"Chess Clapper's reputation is not good, or else he would have put some of the people here attending court from Elkhorn township on the stand to prove his good reputation. Gentlemen, he is low down and ought to be convicted."

To these remarks defendant called the attention of the court in his motion for new trial, one of his grounds for new trial being that, "The prosecuting attorney in his closing remarks said that the attorney for the defendant had tampered with the witnesses and had buffaloed and bulldozed the court, and that the defendant was a scoundrel and a perjurer and ought to be convicted."

Other objectionable remarks of the prosecuting attorney are complained of in defendant's brief, but as the attention of the court was not called thereto in the motion for new trial, they cannot be noticed upon this appeal. [State v. Miles, 199 Mo. 530.]

While the record discloses that defendant objected to the quoted remarks of the prosecuting attorney at the time they were made, and requested the court to instruct the jury to disregard them in considering of their verdict, the court simply requested the attorney to keep within the record, and wholly failed, either orally or by written instruction, to instruct the jury as requested by defendant.

The remarks were simply inexcusable, and ought not to have been tolerated in a court of justice. They cast unwarranted reflections upon the integrity of the attorney for the defendant, and heaped upon the defendant the worst kind of personal abuse. In part, the remarks were disrespectful to the court. They were not supported by the facts in evidence, in no way served to make plain the issues joined between the

State and the defendant, were wholly out of place, and were calculated to inflame the passions of the jury against the defendant, who was entitled to a fair and impartial trial without having heaped upon his head personal abuse in the presence of the court and jury. [Sherwood's Commentaries on the Criminal Law of Missouri, 810; State v. Young, 99 Mo. 666; State v. Jackson, 95 Mo. 623; State v. Fischer, 124 Mo. 460.]

In view of the outrageous character of the remarks complained of, the court failed of its duty in not reprimanding the prosecuting attorney, and directing the jury by a written instruction, as requested by defendant, to disregard said remarks and statements in considering of their verdict.

For these considerations the judgment is reversed and the cause remanded.

All concur.